**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

AUG 29 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RUTH JELINEK,

Plaintiff-Appellant,

v.

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY, DBA
ANPAC Insurance Company, a foreign
corporation,

Defendant-Appellee.

No. 16-36057

D.C. No. 2:15-cv-00779-RAJ

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted June 14, 2018
Seattle, Washington

Before: M. SMITH and WATFORD, Circuit Judges, and RAYES,[**] District
Judge.

This case involves a dispute between Plaintiff-Appellant Ruth Jelinek and her

automotive insurer, Defendant-Appellee American National Property and Casualty

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Douglas L. Rayes, United States District Judge for the
District of Arizona, sitting by designation.

Company ("ANPAC"), over ANPAC's handling of Jelinek's underinsured motorist ("UIM") coverage claim following an automobile accident in October 2012. Jelinek appeals from the district court's order granting summary judgment in favor of ANPAC on Jelinek's extracontractual claims for breach of the duty of good faith and fair dealing and violations of the Washington Insurance Fair Conduct Act ("IFCA"), the Washington Consumer Protection Act ("CPA"), and various provisions of the Washington Administrative Code ("WAC"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's grant of summary judgment and remand for further proceedings.

We review a district court's grant of summary judgment de novo, "applying the same standard of review as the district court under Federal Rule of Civil Procedure 56." *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016). Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

We first review the legal standards governing Jelinek's extracontractual claims.

Under IFCA, an insured "who is unreasonably denied a claim for coverage or payment of benefits by [her] insurer" may file an action for damages. Wash. Rev. Code 48.30.015. A delay in payment due to a good-faith dispute over the value of a claim does not amount to a denial of benefits under IFCA. *See Bealsey v. State Farm Mut. Auto. Ins. Co.*, No. C13-1106RSL, 2014 WL 1494030, at *6 (W.D. Wash. Apr. 16, 2014). But "[w]here the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts (as known or, in some cases, as would have been known had the insurer adequately investigated the claim), and would not compensate the insured for the loss at issue, the benefits promised in the policy are effectively denied." *Morella v. Safeco Ins. Co. of Ill.*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013).

Washington also recognizes that "an insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (Wash. 2003). In UIM cases, "[t]hese duties of good faith and fair dealing 'require the insurer to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage.'" *Edmonson v. Popchoi*, 228 P.3d 780, 785 (Wash. Ct. App.

2010) (quoting *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 938 (Wash. 1998)). Whether an insurer acted in bad faith is a question of fact. *Smith*, 78 P.3d at 1277. "Violation of Washington's insurance regulations is evidence of bad faith." *Seaway Props., LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240, 1253 (W.D. Wash. 2014) (citing *Coventry*, 961 P.2d at 935).

Finally, to prevail in a CPA action, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1996). A plaintiff may establish the first two elements by proving a violation of WAC 284-30-330, which enumerates specific unfair claims settlement practices. *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 792 P.2d 520, 529 (Wash. 1990); *Torina Fine Homes, Inc. v. Mut. of Enumclaw Ins. Co.*, 74 P.3d 648, 652–53 (Wash. Ct. App. 2003). Of particular import here, WAC 284-30-330(4) provides that it is unfair for an insurer to refuse "to pay claims without conducting a reasonable investigation."

With these principles in mind, Jelinek's extracontractual claims share a common allegation that ANPAC effectively denied her claim by failing to reasonably investigate it, and by making an unreasonably low settlement offer designed to avoid litigation rather than fairly compensate Jelinek based on a

reasonable evaluation of the evidence. In granting summary judgment for ANPAC, the district court concluded that ANPAC acted reasonably and merely had a good-faith disagreement over the value of Jelinek's claim.

The district court's order reflects one reasonable view of the evidence, which is favorable to ANPAC. But viewing the evidence in the light most favorable to Jelinek, as we must as this stage, a jury reasonably could find that ANPAC only superficially reviewed the records that had been provided to it, and that its settlement offers were based on litigation avoidance without reference to Jelinek's actual injuries. For example, despite conducting a lengthy examination under oath ("EUO") of Jelinek in March 2015, the EUO transcript evidently was not made part of the claim file, and there is no evidence that anyone other than an ANPAC attorney reviewed the full transcript. Additionally, on April 21, 2015, "[i]n the interest of trying to keep this matter out of the courthouse," ANPAC offered Jelinek "$25,000 in full settlement of [her] UIM claim," but warned that this "offer is the most that ANPAC will pay." ANPAC made this final offer despite having not yet received all materials it had requested and to which it was entitled under the policy, such as an independent medical examination. A jury reasonably could find that, by the time Jelinek filed suit, ANPAC had decided it would not value her claim at more than $25,000, regardless of what the evidence might show, and that the offer was based on a desire to avoid litigation rather than a good-faith appraisal of Jelinek's injuries.

Because a jury reasonably could draw inferences in favor of either party based on the evidence presented, the district court erred in granting summary judgment in favor of ANPAC on Jelinek's extracontractual claims.

**REVERSED AND REMANDED.**